## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERMARKUS PATTERSON** | **CIVIL ACTION** |
| **VERSUS** | **NO 06-4087** |
| **FAIRFIELD INDUSTRIES, INC.** | **SECTION "A"**<br>**Judge Jay C. Zainey** |
| | **MAG. DIV. 5**<br>**Magistrate Judge Alma L. Chasez** |

**FAIRFIELD INDUSTRIES INCORPORATED'S**
**MEMORANDUM IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

Fairfield Industries Incorporated ("Fairfield") submits this Memorandum in support of its

Motion for Partial Summary Judgment against plaintiff, Germarkus Patterson.  For the reasons

set forth below, and according to the evidence and applicable law, Fairfield urges the Court to

grant the relief sought.

**I.    INTRODUCTION**

Plaintiff alleges that he was employed by Fairfield as a Jones Act seaman aboard the

oceanographic research vessel M/V FAIRFIELD ENCOUNTER and injured as a result of the

negligence of his employer and unseaworthiness of its vessel.[1]  However, plaintiff is barred from bringing a Jones Act claim[2], so the Court should grant Fairfield's motion and dismiss plaintiff's Jones Act negligence claim.

## II.    BACKGROUND

This case arises out of an alleged injury to plaintiff on or about October 18, 2005, while working as a Linesman on Fairfield's M/V FAIRFIELD ENCOUNTER.[3]  The FAIRFIELD ENCOUNTER has been designated and accepted by the United States Coast Guard as an oceanographic research vessel under the Oceanographic Research Vessels Act ("ORVA").[4] Plaintiff alleges he suffered injuries to his right arm while retrieving seismic equipment onto that vessel.[5]  He attributes this injury to the Jones Act negligence of his employer, Fairfield, and to the unseaworthiness of its M/V FAIRFIELD ENCOUNTER.[6]  This motion addresses only plaintiff's Jones Act negligence claim, as Fairfield acknowledges that plaintiff is entitled to pursue an unseaworthiness claim, as well as his maintenance and cure claim.

Plaintiff's job description as a "Linesman" makes him responsible for the handling, deploying and retrieving of all seismic equipment as well as performing general maintenance and upkeep on the vessel.[7]  His essential job functions include working as part of the line crew during all drop, pick ups and trouble shooting of seismic equipment as well as performing general

---

[1] See Plaintiff's Complaint.

[2] See Presley v. Vessel Carribean Seal, 709 F.2d 406 (5ᵗʰ Cir. 1983); *cert denied*, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *see also* Western Atlas International, Inc. v. Levine, 1997 WL 608729 (W.D.La.); *see also* Williams v. Western Atlas, Inc., 1998 WL 892645 (E.D.La.).

[3] See Plaintiff's Complaint; Statement of Uncontested Facts No. 3; Exhibit "A", Affidavit of James Nelson Thompson; Exhibit "B", Deposition of Plaintiff, page 34, lines 21-23.

[4] See Statement of Uncontested Facts No. 3; Exhibit "C", Letter of Designation as an Oceanographic Research Vessel, M/V FAIRFIELD ENCOUNTER, O.N. 1040098.

[5] See Plaintiff's Complaint; Exhibit "B", Deposition of Plaintiff, page 34, lines 21-23.

[6] See Plaintiff's Complaint.

[7] See Statement of Uncontested Facts No. 1; Exhibit "A", Affidavit of James Nelson Thompson and attached Job Description for Linesman.

2

housekeeping and upkeep of the vessel, assisting in the loading and unloading of crew supplies and groceries when needed, and maintaining the boat decks in a clean and organized manner at all times.[8]

In his deposition, plaintiff described his job duties as follows:

Q      What kind of work does a linesman do?

A      Well, we – it's basically 65 percent of the time on the line. That's working with the seismic equipment, and like the other 35 or 40, give or take, we're upkeeping the boat. We are cleaning. We are helping load and unload the freight. We are working with the crane, working with heavy boxes, just basically anything that was there for us to do we did around the boat. It wasn't just plain, simple work on the line and then go back. We actually kept the boat up too. We tied it up and we dock up and everything else too.

Q      So about 65 percent of your time was doing line work?

A      About 60, 65 percent of the time was line work, yes, sir.

Q      The other was cleaning and docking and –

A      Yes, sir. Loading and unloading, yes, sir.

Q      In which part of that did your accident occur?

A      It was on the line.

Q      Tell me about the line work that a linesman does, just generally. You don't have to go into exactly what you were doing at the time of your accident, but generally speaking, what does a linesman do?

A      Well, a linesman on the line, basically we do two different things: We drop buoys and pick them up.[9]

---

[8]See Statement of Uncontested Facts No. 2; Exhibit "A", Affidavit of James Nelson Thompson and attached Job Description for Linesman.

[9] See Exhibit "B", Deposition of Plaintiff, page 33, line 25 through page 35, line 6.

3

## III.   LAW AND ARGUMENT

### A.   Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues to any material fact and that the moving party is entitled to a judgment as a matter of law."  Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.[10]  This burden is not satisfied by creating merely some metaphysical doubt as to the material facts, by conclusory allegations, unsubstantiated assertions or by only a scintilla of evidence.[11]

To demonstrate that summary judgment is inappropriate, the nonmoving party (plaintiff) must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file," designate 'specific facts showing that there is a genuine issue for trial.'"[12]  A court resolves factual controversies in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[13]  A court will not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.[14]

Partial summary judgment is appropriate where the court finds that there are no genuine issues of material fact and that the provisions of ORVA preclude the claimant from any recovery

---

[10] Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

[11] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted).

[12] Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Auguster v. Vermillion Parish School Board, 249 F.3d 400, 402 (5th Cir. 2001).

[13] Little, 37 F.3d at 1075.

[14] See Id. (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

4

under the Jones Act.[15]  In this case, plaintiff's conclusory assertions that he is a seaman entitled to bring a Jones Act claim against his employer does not withstand summary judgment scrutiny. Because plaintiff was a member of the scientific personnel on board the FAIRFIELD ENCOUNTER, an ORVA vessel, as a matter of law, plaintiff is barred from asserting a negligence claim under the Jones Act.

**B.      Plaintiff is barred from pursuing claims under the Jones Act.**

Because plaintiff was working on board the M/V FAIRFIELD ENCOUNTER as a Linesman, he is considered part of the scientific personnel and barred from pursuing claims under the Jones Act.[16]  Therefore, partial summary judgment dismissing plaintiff's Jones Act claim against Fairfield is appropriate.[17]

In Williams v. Western Atlas, Inc., the plaintiff, a "Junior Linesman," brought a Jones Act negligence claim against his employer.[18]  His duties on board the vessel included the distribution of seismic cable attached to buoys for research purposes.[19]  He was injured while untangling seismic cable on board the vessel.[20]

The plaintiff in Williams initially brought his Jones Act claim in Civil District Court for the Parish of Orleans.[21]  The defendant removed the case to the Eastern District of Louisiana on the basis of diversity of citizenship between the parties.[22]  The plaintiff then filed a motion to

---

[15] See Western Atlas International, Inc. v. Levine, 1997 WL 608729, 2-3 (W.D.La.); citing Presley v. Vessel Carribean Seal, 709 F.2d 406, 409 (5th Cir. 1983); cert denied, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984).

[16] Plaintiff is still a seaman entitled to pursue maintenance and cure and unseaworthiness claims.

[17] See Western Atlas International, Inc. v. Levine, 1997 WL 608729, 2-3 (W.D.La.).

[18] See Williams v. Western Atlas, Inc., 1998 WL 892645, 1 (E.D.La.).

[19] Id.

[20] Id.

[21] Id.

[22] Id.

5

remand under the "savings to suitors" clause.[23]   In determining whether to remand the case, Judge Eldon Fallon examined whether ORVA prohibited the plaintiff from bringing a Jones Act claim and thereby defeated removal on a "savings to suitors" clause basis.[24]

In deciding whether ORVA should apply, Judge Fallon considered that the seismic vessel was properly registered with the United States Coast Guard as an oceanographic research vessel, that the owner provided a separate crew responsible for the traditional navigation and maintenance functions of the vessel, that members of a scientific crew need not have an advanced degree, and that the plaintiff's presence aboard the vessel was directly and solely related to the furtherance of the vessel's scientific mission.[25]   Judge Fallon held that ORVA applied, thereby displacing the plaintiff's Jones Act claims.[26]   Plaintiff's motion to remand was denied.[27]

Likewise, in Western Atlas International, Inc. v. Levine, defendant Levine served as a "cablehand" on board a oceanographic research vessel and brought a Jones Act counterclaim against his employer.[28]   His primary responsibilities were to assist in the picking up and laying out of cable which is an integral function of seismic testing.[29]   Levine argued that because he only possessed a sixth grade education and performed manual labor and general maintenance duties while on board, there were issues of material fact as to whether he was "scientific personnel."[30]   In deciding whether ORVA applied, the court considered that the vessel was

---

[23] See Williams v. Western Atlas, Inc., 1998 WL 892645, 1 (E.D.La.).
[24] Id. at 1-2.
[25] Williams, 1998 WL 892645 at 1.
[26] Id.
[27] Id. at 2.
[28] Western Atlas International, Inc. v. Levine, 1997 WL 608729, 1 (W.D.La.).
[29] Id.
[30] Id. at 2.

6

scientific mission of the vessel.  Therefore, as a scientific personnel on an ORVA vessel, he is prohibited from bringing any claims under the Jones Act.

## IV.    CONCLUSION

Because plaintiff was working on board the M/V FAIRFIELD ENCOUNTER as part of the scientific personnel, he is barred from pursuing claims under the Jones Act.  For that reason, Fairfield Industries Incorporated is entitled to a dismissal of plaintiff's negligence claim under the Jones Act, with prejudice.

Respectfully submitted,

PHELPS DUNBAR LLP

BY: _____
George M. Gilly, T.A. (Bar No. 6234)
Jeremy Alan Herschaft (Bar No. 29246)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130

ATTORNEYS FOR FAIRFIELD INDUSTRIES INCORPORATED

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who are authorized to receive electronic service on this 27ᵗʰ day of June, 2007.

_____

8